BYRNES, Judge.
Plaintiff, Velma Dick, sued her former employer, Charter Marketing Company, seeking to recover worker compensation benefits and medical expenses for injuries sustained in the course and scope of her employment. The trial court rendered judgment in favor of the defendant, dismissing the plaintiffs suit and the plaintiff filed this appeal. We affirm the judgment of the trial court.
The plaintiff, a forty-two year old female, was employed by the defendant for a period of six or seven months prior to her accident. The defendant’s place of business is a gas station which sells food products. The plaintiff worked five to six days per week for eight hours a day. Her duties consisted of waiting on customers; sweeping, mopping and cleaning; stocking shelves; lifting cases of food and drink weighing 15-20 pounds each; lifting cases of oil weighing 50-75 lbs each and inspecting gasoline tanks. The tanks subject to the plaintiffs inspection were located above ground at a height of 20-25 feet.
On the date in question, September 21, 1982, plaintiff had mopped and cleaned the station, locked the front of the station, and shut the gas pumps off before she proceeded to the vicinity of the gas tanks in order to check them. She climbed the stairs adjacent to the tanks in order to check them. She fell and injured her back. She was initially taken to Port Sulphur General Hospital where whe was treated and released. She thereafter went to West Jefferson Hospital where she was fitted for a lumbar support and given muscle relaxants and anti-inflammatory medication.
She was treated by Dr. Robert Fleming, an orthopedic surgeon, for a period of two years following the accident. During this time she was admitted to the hospital for treatment seven times and she underwent two surgical procedures. Dr. Fleming diagnosed Ms. Dick as having a lumbar sprain. There was asymmetry of the nerve root at L4-5 and bulging of the disc at L3 & 4.
The plaintiff was last seen by Dr. Fleming on April 12, 1988. She was suffering low back pain which radiated into both legs. She had abnormal mobility of the L3-L4. She also had traumatic arthritis of that area. Dr. Fleming recommended a fusion of L3-S1, however this operative procedure was predicated upon the plaintiff losing fifty pounds. She was instructed not to engage in repetitive lifting in excess of five pounds and she was prohibited from lifting any weight in excess of twenty-five pounds. She could engage in occasional bending and squatting but she should not bend from the waist. She was also instructed not to engage in repetitive bending, squatting, lifting, stooping nor climbing. Dr. Fleming found that the plaintiff had a 20% whole body permanent physical impairment. He stated that there was no need for an orthopedic follow up. It was Dr. Fleming’s opinion that if the plaintiff lost weight she would be able to live with her problems. He also felt that she could manage any pain with over the counter analgesics.
Plaintiff filed suit to recover worker’s compensation benefits for total and permanent disability. The parties to this action stipulated that the accident occurred on September 20, 1982 and that Ms. Dick’s injuries occurred while she was engaged in the course and scope of her employment. It was also stipulated that plaintiff had an average weekly wage of $142.00 and that her compensation rate was $94.67 per week. She received compensation benefits from September 21, 1982 through April 6, 1987 totalling $22,436.79.
In her first assignment of error, plaintiff contends that the trial court erred in refusing to order compensation benefits to be paid beyond August, 1987 for the full period of 450 weeks.
The trial court found the plaintiff to be suffering from permanent partial disability. In refusing to award additional compensation benefits the court reasoned as follows:
⅜? ⅝ ⅜ # ⅜
Clearly because of the nature of her injury the plaintiff is permanently partially disabled under the Workerman’s Com *781 pensation Law. However, to be entitled to receive weekly compensation benefits an injured employee must prove:
1. That the injury produced a partial permanent disability and
2. That the employee is partially disabled from performing the duties he was customarily engaged in at the time of the injury or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience; and
3. That the employer is earning a wage which is less than the wage he earned at the time of the injury.
Only after each of the foregoing are answered in the affirmative can the court then determine the amount of compensation due. The court finds that the plaintiff failed to meet the third requirement of the test, that is the plaintiff earned a wage greater than her wages at the time of her injury. The Court finds that through August 1987 the plaintiff earned a wage in excess of her weekly wage at the time of her injury, September 21, 1982.
For the foregoing reasons, Judgment will be entered dismissing plaintiffs suit at her costs.
The Louisiana Worker’s Compensation Act as it existed at the time of plaintiffs injuries is controlling. Dragon v. Orleans Parish School Board, 347 So.2d 306 (La.App. 4th Cir.1977).
Prior to 1983, Louisiana Revised Statute, Title 23 Section 1221 read, in pertinent part:
Sec. 1221. Temporary, permanent, or partial disability; schedule of payments “Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
⅝ Sfc ifc if! ⅜ Hi
3. For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason .of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975; and on or before August 31, 1977 and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee’s actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this sub-section (3) be increased beyond the maximum number of weeks stated in this subdivision (3).
The plaintiff argues that she is entitled to compensation benefits during that period of time when she is not working and/or for the period of time she is working but earning wages less than those she earned while employed by her compensation provider. We agree.
In the instant case the trial court found that from the date of her injury on September 21, 1982 through August, 1987 *782 the plaintiff earned wages which exceeded those paid while she was in the employ of her compensation provider. Under the express provisions of LSA-R.S. 23:1221(3) as it read at the time of plaintiff’s injuries, the employer is entitled to a reduction of one week of compensation against the maximum number of weeks compensation is payable and also for any week the employee actually received earnings. This finding, which rests on a credibility determination is fully supported by the record and will not be disturbed by this court. Virgil v. American Guaranty & Liability Insurance Co., 507 So.2d 825 (La.1987); Arcenaux v. Domingue, 365 So.2d 1330 (La.1978). Based upon this finding the trial court correctly concluded that Ms. Dick was not entitled to compensation benefits for the balance of the 450 weeks. The record indicates that the plaintiff in fact received compensation benefits from September 21, 1982 through April 6, 1987 in the amount of $22,436.79.
Since the plaintiff has received worker compensation benefits for 236 weeks of which she was not entitled, the trial court correctly concluded that no further benefits were due to her for the weeks remaining. This assignment of error lacks merit.
Ms. Dick next alleges that she is entitled to penalties and attorney fees “for the arbitrary and capricious termination of Ms. Dick’s compensation after Ms. Dick stopped working in August, 1987.”
Louisiana Revised Statute Title 23 Section 1201.2 provides for an award of attorney fees and penalties upon termination of benefits without probable cause:
La.R.S. 23 Sec. 1201.2. Failure to pay^ claims; discontinuance; attorney’s fees Any insurer liable for claims arising under this Chapter, and employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney’s fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney’s fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney’s fees for the prosecution and collection of such claims. ... (Emphasis Supplied)
In this case the plaintiff argues that the defendant was not entitled to terminate her compensation benefits because of the fact that she was working and receiving worker’s compensation.
As previously discussed, as of the time of termination of worker compensation benefits the plaintiff had received the total amount of benefits to which she was entitled under the Act. La.R.S. 23:1221(3). That is, of the 450 week period, plaintiff had earned wages for 236 weeks which exceed her prior wage earnings while in the employ of her compensation carrier, thus precluding her entitlement to benefits for that time. Since plaintiff was paid both wages and compensation for 236 weeks, she had been adequately compensated for the remaining 193 weeks. Under these circumstances we concluded the defendant’s termination of plaintiff’s worker compensation benefits was based upon probable cause. As such, the defendant’s actions were not arbitrary and capricious. For this reason attorney fees and penalties are not owing.
In her final assignment of error the plaintiff contends that the trial court erred in failing to find her totally and permanently disabled under the odd-lot doctrine.
*783 An employee is totally and permanently disabled within the confines of the Louisiana Worker’s Compensation Act when his injuries preclude him from engaging in any gainful occupation for wages whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and, whether or not an occupation for which the employee is particularly suited by reason of education, training and experience. La. R.S. 23:1221(2)-[pre-1983]. Under the odd-lot doctrine, an employee is considered totally disabled if by virtue of his injuries his services are so limited in quality, dependability or quantity that a reasonably stable market for his service does not exist. Alexis v. New Orleans Public Service, Inc., 449 So.2d 1084 (La.App. 4th Cir.1984), writ den. 457 So.2d 12 (La.1984).
The plaintiff in this case has not proven that she is an odd-lot worker and as such, entitled to worker compensation benefits for total and permanent disability.
The record indicates that Ms. Dick has been gainfully employed on a continuous basis since her accident; first as a bartender at Shady Lady Lounge, then at Wells Fargo Security Services as a security guard, and finally at the LBJ Properties, a/k/a Royal Knight Apartments, as a security guard. During this time she earned wages equal to or greater than those earned prior to her injury. Additionally, during this time, she neither missed work nor complained to her employer of an inability to perform her job as a result of her condition or due to pain.
For these reasons the trial court correctly refused to classify the plaintiff as an odd-lot employee entitled to compensation benefits for total and permanent disability.
For the reasons assigned the judgment of the trial court is affirmed at plaintiffs costs.
AFFIRMED